IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ALFREDA JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. RWT 06-3054 |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On November 20, 2006, Plaintiff Alfreda Johnson ("Johnson") filed a complaint against Defendant, District of Columbia ("District"), seeking to compel the conveyance of certain real property located in Charles County, Maryland. On February 16, 2007, the District moved to dismiss Johnson's Complaint alleging, among other things, lack of subject matter jurisdiction. Because the Court concludes that it lacks jurisdiction over this case, it will grant the District's motion by separate order.

### I. FACTUAL BACKGROUND

The complaint alleges that Johnson entered into an agreement with Alberta H. Tyler ("Tyler"), a resident of the District of Columbia, to place both of their names on a contract to purchase property located at 2622 Enterprise Place ("the property") in Waldorf, MD. Johnson alleges that the sole motivation behind this agreement was to make it easier for Johnson to obtain financing for the purchase by virtue of Tyler's additional income on the loan application. Johnson alleges that, as part of the agreement, Tyler would not contribute any of her own funds towards the purchase nor would she ever reside at the property.

-2-

On June 26, 1996, Anna G. Proctor ("Proctor"), acting on behalf of Acton Village Limited Partnership, conveyed the property to Johnson and Tyler as tenants in common for a consideration of $124, 300.  Soon after this transaction, Tyler, a District of Columbia resident, died on September 14, 1996, intestate and with no legal heirs.[1]  Three years later, on July 24, 1999, Proctor wrote a letter corroborating Johnson's allegations that Tyler never contributed money toward the purchase of the property nor resided there at any time.  The letter was apparently written on behalf of Johnson, in support of her attempt to have Tyler's name "removed" from the deed to the property after Tyler's death.[2]

To further facilitate the process of "removing" Tyler's name from the deed, Johnson filed a petition for unsupervised probate in the District of Columbia.  Johnson at first claimed to be Tyler's "god-daughter," but later amended her probate petition to claim that she is Tyler's "third cousin."  This change prompted the District to object to the unsupervised nature of the probate proceedings.  The District requested instead that the administration of Tyler's estate either be supervised by the probate court with Johnson as the personal representative or that the personal representative (i.e., Johnson) be replaced by a non-interested member of the Bar.

---

[1] Although plaintiff alleges in her complaint that Tyler has no legal heirs, on July 10, 2007, she filed a "Motion for Leave to Supplement Pleadings" in which she now claims that Tyler has a son, and that the District therefore lacks standing. See Paper No. 15.  Because the Court concludes that it lacks jurisdiction, it will not consider this motion.

[2] Because the real estate is located in Maryland, the law of that state would govern the distribution of the decedent's one-half interest as a tenant in common.  Bish v. Bish, 31 A.2d 348, 350 (Md. 1943); See also, Wilkinson v. Leland, 27 U.S. (1 Pet.) 627 (1829). If the owner of property in Maryland dies intestate and with no heirs, in the absence of an enforceable agreement with the Plaintiff to convey the property to her, the one-half interest of the decedent would escheat to the Board of Education of Charles County. See MD. CODE ANN., EST. & TRUSTS § 3-105(a)(2)(ii)(2006).  Accordingly, it would appear that litigation of this issue would require the participation of the Board of Education of Charles County. See Bd. of Educ. v. Browning, 635 A.2d 373, 376 (Md. 1994).

On December 15, 2006, the Superior Court for the District of Columbia denied Johnson's request that her probate petition be dismissed with prejudice. *In re: Estate of Alberta H. Tyler*, Admin. No. 786-06 (Order orally issued, Dec. 15, 2006) (J. Lopez).  On July 8, 2007, the probate court concluded that the District's challenge to Johnson's probate petition was unwarranted and subsequently dismissed the District's objection in that case without prejudice. *See In re: Estate of Alberta H. Tyler*, Admin. No. 786-06 (Order issued, July 9, 2007) (J. Winston).  The ultimate issues concerning Tyler's estate have not been yet been resolved, however, and the final resolution of Tyler's estate is still pending in the Superior Court for the District of Columbia.

## II. STANDARD OF REVIEW

The plaintiff has the burden of alleging and proving the existence of subject matter jurisdiction. *Evans v. B.F. Perkins, Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  If a defendant challenges jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  The district court should then only grant the defendant's motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

In challenging jurisdiction pursuant to Rule 12(b)(1), the defendant has two options.  First, the defendant may contend that a complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  In that event, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*  Second, the

defendant may contend that the jurisdictional allegations of the complaint are not true. *Id.* At that point, "[a] trial court may go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.* In doing so, the court "may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.*

### III. ANALYSIS

A. *This Court Lacks Subject Matter Jurisdiction Because The District Of Columbia Does Not Qualify As A "Citizen" Subject To Diversity Jurisdiction Under 28 U.S.C. § 1332.*

A party may invoke federal subject matter jurisdiction by satisfying the requirements for diversity of citizenship set forth in 28 U.S.C. § 1332. This statute states, in relevant part:

> (a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>
> (1) *citizens* of different states . . .

28 U.S.C. § 1332(a) (2006) (emphasis added).

As early as 1886 the Supreme Court was called upon to decide whether the States themselves were "citizens" within the context of diversity jurisdiction. The Court concluded in *Stone v. State of South Carolina* that "[t]here is no statute which authorizes the removal of a suit between a state and citizens on the ground of citizenship, for a state cannot, in the nature of things, be a citizen of any state." 117 U.S. 430, 433 (1886). The Supreme Court reiterated this principle more clearly eight years later in *Postal Tel. Cable Co. v. State of Alabama*, saying:

> A state is not a citizen. And under the judiciary acts of the United States it well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States.

155 U.S. 482, 487 (1894). And though those cases were decided before the enactment of § 1332, the Supreme Court has consistently reaffirmed this principle even as the statute upon which diversity jurisdiction rests has changed. *See, e.g. Illinois v. City of Milwaukee, Wisconsin*, 406 U.S. 91, 98 n.1 (1972) (noting that it is "well settled that a suit between a State and a citizen of another States is not a suit between citizens of different States for purposes of diversity of citizenship jurisdiction").

Whether or not the District is similarly exempt from diversity jurisdiction has not been addressed by the Supreme Court, though the United States Court of Appeals for the District of Columbia Circuit provided a detailed analysis of the issue in *Long v. District of Columbia*, 820 F.2d 409 (D.C. Cir. 1987). In *Long*, the court found that the only "State" of which the District could be a citizen was the District itself and that it would be a "bizarre characterization" to find the District a citizen of itself for purposes of diversity jurisdiction when the same characterization has been rejected with respect to the fifty states. *Id.* at 414. Though the *Long* court recognized that the District possesses many characteristics of a municipality, it found labeling the District as such ineffectual for diversity purposes given that under those circumstances the municipality would be the "alter ego" of the "State" itself. *Id.* Thus, the *Long* court concluded that the District was not subject to diversity jurisdiction under § 1332. *Id.*

As in *Long*, Johnson here wishes to invoke diversity jurisdiction in a suit against the District. And, just as in *Long*, this Court finds "the conclusion inescapable that the District, like the fifty states, is not subject to diversity jurisdiction." *Id.* The Court therefore concludes that diversity jurisdiction does

not exist in this case because the District is not a "citizen" under § 1332.[3] Given that jurisdiction is premised solely on diversity here, the Court concludes that it lacks subject matter jurisdiction to hear this case.[4]

    B.  *In the Alternative, this Court Lacks Jurisdiction Because the Probate Exception Applies.*

In *Markham v. Allen*, the Supreme Court recognized that federal courts do not have jurisdiction to probate wills or administer estates, and concluded that federal courts could only exercise otherwise valid federal subject matter jurisdiction "so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court." 326 U.S. 490, 494 (1946).

The holding in *Markham* has come to be known as the "probate exception," and was not addressed again by the Supreme Court until the case of *Marshall v. Marshall*, 547 U.S. 293 (2006). In *Marshall*, the plaintiff brought a tortious interference claim in federal court that arose out of events surrounding the administration of an estate. *Id.* at 1744. The Supreme Court, narrowly interpreting the "interference" language used in *Markham,* held that because the tort claim against the defendant sought

---

[3] The District additionally argues that the amount in controversy requirement of § 1332 may also not be met. There is nothing before this Court suggesting to a 'legal certainty" that the $100,000 Plaintiff alleges is in controversy is misguided. *See St. Paul Mercury Indem. Corp. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Furthermore, even if the basis for the amount provided by Plaintiff is unclear, as the District contends, "[t]he Fourth Circuit has not determined the exact standard to be applied in ascertaining the amount in controversy in diversity cases." *Delph v. Allstate Home Mortgage, Inc.*, 478 F. Supp.2d 852, 854 (D. Md. 2007) (Williams, J.). However, because this Court concludes that the District is not subject to diversity jurisdiction, the Court declines to address the amount in controversy issue raised by the District.

[4] Though the District's motion also mentions lack of personal jurisdiction and insufficiency of service of process as alternative grounds to dismiss Plaintiff's complaint, this Court declines to address either of these issues. The District does not address its claim of lack of personal jurisdiction in its memorandum, and, in any event, the Court is convinced it does have jurisdiction over the parties because the property in dispute is located in Maryland. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 224 (4th Cir. 2002) (concluding that "[a] federal district court can exercise personal and in rem jurisdiction to the same extent as courts in the state where the district court is located"). With respect to the District's claim of insufficiency of service of process, resolving that issue would require a factual inquiry that is rendered moot by the Court's conclusion that it lacks subject matter jurisdiction.

separate relief and was distinct from the underlying probate claims, there were no "sound policy considerations" to support applying the probate exception. *Id.* Further, the Supreme Court found that because federal and state courts both address tortious interference claims regularly, the state court possessed no "special proficiency" in handling the issues raised by the plaintiff. *Id.*

In the present case, Johnson requests that this Court exercise jurisdiction over property that, as part of Alberta Tyler's estate, is already at issue in the pending probate proceeding. Unlike *Marshall,* Johnson is requesting from this Court the same relief with respect to the property that is to be decided in a probate proceeding. *Id.* at 1748. Given the "special proficiency" of state courts to deal with probate matters, the Court concludes that there are "sound policy considerations" favoring the application of the probate exception in this case. Thus, even if this case otherwise had proper subject matter jurisdiction, the District's motion should be granted under the probate exception.

## IV. CONCLUSION

In *Cohens v. Virginia*, Chief Justice Marshall famously cautioned: "[i]t is most true that this Court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction, if it should . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." 6 Wheat. 264, 404 (1821). In consideration of these wise words, and for the reasons stated herein, the Court concludes that it lacks jurisdiction because (1) the District is not a "citizen" within the context of § 1332, and, in the alternative, (2) the probate exception to federal subject matter jurisdiction is applicable. A separate order follows.

DATE: 7/19/07

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE